IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS MARLER, #05720-093,<br><br>Plaintiff,<br><br>v.<br><br>ESTELLA DERR, ET AL.,<br><br>Defendants. | Civ. No. 22-00088 JMS-WRP<br><br>ORDER (1) DISMISSING COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND; AND (2) DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST FOR AN INJUNCTIVE ORDER OR EMERGENCY HEARING, ECF NO. 6 |

### ORDER (1) DISMISSING COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND; AND (2) DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST FOR AN INJUNCTIVE ORDER OR EMERGENCY HEARING, ECF NO. 6

Before the court is pro se Plaintiff Thomas Marler's ("Marler") Prisoner Civil Rights Complaint ("Complaint"), ECF No. 1, and his Request for an Injunctive Order or Emergency Hearing, ECF No. 6. Marler is currently incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC-Honolulu"). *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Name"; enter "Thomas" in "First" field and "Marler" in "Last" field; and select "Search") (last visited Apr. 14, 2022).

Marler alleges that Defendants[1] "violated [his] 8th Amendment rights" by threatening his safety. ECF No. 1 at PageID # 6–7. The Complaint, ECF No. 1, is DISMISSED for the reasons set forth below. *See* 28 U.S.C. § 1915A(a)–(b). Marler may file an amended pleading on or before May 13, 2022. Because none of Marler's claims survive mandatory screening, his Request for an Injunctive Order or Emergency Hearing, ECF No. 6, is DENIED without prejudice.

## I. STATUTORY SCREENING

Because Marler is a prisoner seeking relief against a government official, the court screens his Complaint pursuant to 28 U.S.C. § 1915A(a).[2] The court must dismiss claims that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit. *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).

Screening under 28 U.S.C. § 1915A(a) involves the same standard as that under Federal Rule of Civil Procedure 12(b)(6). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) is read in conjunction with Rule

---

[1] Marler names as Defendants FDC-Honolulu Warden Estella Derr, Head of Psychology Dr. Pysh, Case Manager L. Lazo, and Case Management Coordinator A. Lopez. ECF No. 1 at PageID ## 1–3. Warden Derr, Dr. Pysh, and Lopez are named in their individual and official capacities. *Id.* Lazo is named only in her official capacity. *Id.* at PageID # 2.

[2] Marler paid the fees associated with this suit and is not proceeding in forma pauperis. *See* ECF No. 5.

8(a).  *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013).  Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but a complaint must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which the claim rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although this plausibility standard is not akin to

a "probability requirement," it asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). In dismissing for failure to state a claim, "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

## II.  BACKGROUND[3]

Marler self-surrendered at FDC-Honolulu on January 18, 2022. ECF No. 1 at PageID # 6. Upon his arrival at FDC-Honolulu, Marler was placed in quarantine. *Id.* Marler remained alone in his two-person cell until another inmate, Russell Monlux, moved in with him on January 21, 2022. *Id.* According to

---

[3] Marler's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Marler, Monlux has "an extensive violent history" that includes assault convictions, assaults on other inmates, and assaults on correctional officers. *Id.* at PageID ## 6-7. Monlux shared with Marler his "homicidal fantasies" involving staff members, other inmates, and celebrities. *Id.* at PageID # 7. Monlux also yelled and made "violent gesticulations." *Id.* Marler was "terrified" and "feared for his life." *Id.*

Marler shared a cell with Monlux "for 25 days." *Id.* During this time, Monlux sent at least five emails to Warden Derr. *Id.* According to Marler, these emails "indicat[ed] . . . the level of [Monlux's] mental state." *Id.* Dr. Pysh and other members of the "Psychology Department" also made daily visits to see Monlux between January 21 and February 14. *Id.* at PageID # 8. During these visits, Marler thought that Dr. Pysh was "dismissive" and "unprofessional." *Id.* The visits "inflamed" Monlux and allegedly "endangered" Marler. *Id.*

On February 14, 2022, Marler and Monlux were moved to a "general population permanent housing unit[.]" *Id.* at PageID # 7. This unit housed "minimum security elderly vulnerable inmates, high security gang members (from rival gangs), inmates that have yet to be sentenced, individuals that have yet to be tried (pretrial) and more than 40 (of 110 total) non-U.S. citizens." *Id.* at PageID ## 7–8. According to Marler, housing rival gangs together resulted in "two significant gang fights in the past 7 months." *Id.* at PageID # 8.

The court received Marler's Complaint on March 7, 2022. ECF No. 1. Marler alleges in the Complaint that Warden Derr, Dr. Pysh, Lazo, and Lopez "violated [his] 8th Amendment rights" by threatening his safety. *Id.* at PageID # 6. Marler seeks $300,000 and "an order from the court requiring [FDC-Honolulu] to properly protect vulnerable inmates by properly segregating security level inmates per Bureau of Prisons policy and applicable law." *Id.* at PageID # 12.

### III.  DISCUSSION

A.  **Dismissal of 42 U.S.C. § 1983 Claims**

Marler marked a box on the Complaint indicating that he is invoking the court's jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. ECF No. 1 at PageID # 1.

Section 1343(a)(3) provides that district courts have original jurisdiction of "any civil action authorized by law . . . [t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens . . . within the jurisdiction of the United States[.]" 28 U.S.C. § 1343(a)(3). Courts have described this paragraph as the "jurisdictional counterpart to § 1983[.]" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 n.4 (1989); *Tongol v. Usery*, 601 F.2d 1091, 1099 (9th Cir. 1979).

Section 1983 provides that every person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured[.]" 42 U.S.C. § 1983. Section 1983 therefore "provides a statutory cause of action where state officials acting under color of law violate constitutional rights." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021). But section 1983 "provides no cause of action against federal [officials] acting under color of federal law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("There is no valid basis for a claim under section 1983 . . . against federal officials acting under color of federal law.")

Marler is a federal prisoner in a federal prison who alleges that federal prison officials violated his rights under the Eighth Amendment. *See* ECF No. 1 at PageID ## 6–9. Because Marler does not allege that any Defendant was acting under color of state law, the court lacks jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. *See Emory v. United States Dep't of Hous. & Urb. Dev.*, 2006 WL 8451336, at *5 (D. Haw. Aug. 31, 2006) (dismissing claims under 42 U.S.C. § 1983 "[b]ecause the Complaint [did] not allege that Defendants acted pursuant to state law or were otherwise clothed with the authority of state law").

If Marler intends to invoke this court's jurisdiction pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), he must consider the following legal standards before he files an amended complaint.

**B.     Legal Framework for *Bivens* Claims**

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Id.* at 1857 (quoting *Malesko*, 534 U.S. at 68). Indeed, the Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today." *Id.* at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that is the end of the matter. If a claim is not precluded, the court then applies a two-step test.

---

[4] The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–72 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994); an Eighth Amendment suit against a private prison operator, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001); a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562 (2007); an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*, 565 U.S. 118, 120 (2012); and a Fifth Amendment suit against Department of Justice officials, *Abbasi*, 137 S. Ct. at 1860–63.

At step one of that test, the court determines whether the plaintiff is seeking a *Bivens* remedy in a new context. *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then the court proceeds to the second step.

At step two, the court may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951. "Second, there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951 (internal quotation marks omitted). Although the Supreme Court has yet to define the term "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58.

## C.     Official Capacity Claims

Marler names Warden Derr, Dr. Pysh, and Lopez in their individual and official capacities. ECF No. 1 at PageID # 1–3. He names Lazo only in her official capacity. *Id.* at PageID # 2.

"[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (quotation marks omitted and brackets in original). "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (quotation marks and citation omitted). Thus, any *Bivens* claims against Warden Derr, Dr. Pysh, and Lopez in their official capacities, and any claims against Lazo, who is only named in her official capacity, cannot proceed.

D.   **Supervisory Liability**

Marler also names as Defendants various supervisory officials, including the warden, the head of psychology, and a case management coordinator at FDC-Honolulu. ECF No. 1 at PageID # 1–3.

"In the limited settings where *Bivens* does apply . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. This is because "[t]he purpose of *Bivens* is to deter the *officer*." *Abbasi*, 137 S. Ct. at

11

1860 (quotation marks and citation omitted) (emphasis in original).  "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id.*

A *Bivens* claim must be "brought against the individual official for his or her own acts, not the acts of others." *Id.*; *see also Jones v. McFadden*, 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.").  Thus, to state a claim for relief under *Bivens* based on a theory of supervisory liability, the plaintiff must allege facts showing that supervisory defendants:  (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

Marler fails to say how Warden Derr's, Dr. Pysh's, and Lopez's own acts caused him injury.  For example, Marler does not allege that any of these Defendants decided to house Monlux with Marler.  Any allegation by Marler that these supervisory prison officials are liable purely because of the acts of those under their supervision must be dismissed. *See Fries v. Kernan*, 2018 WL 11260954, at *9 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory

personnel . . . somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim.").

E.   **Threat to Safety**

Marler alleges in the Complaint that Defendants "violated [his] 8th Amendment rights" by threatening his safety. *Id.* at PageID # 6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat-to-safety claim. The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety. *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) (mem.) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim."). Several district courts have also recognized failure-to-protect claims under *Bivens*. *See McDaniels v. United States*, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018); *Marquez v. United States*, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy, Marler fails to state a plausible claim. *See Hernandez*, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x

13

842, 842 (9th Cir. 2021) (mem.) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim.").

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). Prison officials, therefore, "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quotation marks and citation omitted) (ellipsis in original).

A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation must be, objectively, sufficiently serious[.]" *Id.* at 834. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must show deliberate indifference—that is, that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, Marler has not plausibly alleged that he faced a "substantial risk of serious harm." *Id.* at 834. Marler contends that he should not have shared a cell

14

with Monlux because of Monlux's "extensive violent history." ECF No. 1 at PageID # 6. Marler further contends that he should not have been moved to a housing unit with "violent psychopathic inmates." *Id.* at PageID # 8. Marler alleges no facts, however, suggesting that he faced a particular threat of harm. Indeed, Marler does not allege that any inmate at FDC-Honolulu harmed him in any way or that any inmate even attempted to do so. The fact that Monlux and other inmates had committed violent acts in the past, without more, does not necessarily create a "substantial risk of serious harm." *See Dushane v. Sacramento Cnty. Jail*, 2014 WL 3867468, at *8 (E.D. Cal. Aug. 6, 2014) ("While . . . inmates may have been charged with violent crimes, plaintiff has alleged no facts showing that they posed an unreasonable risk of danger to him within the jail.").

Moreover, Marler has not plausibly alleged that any Defendant acted with deliberate indifference to his safety. *Farmer*, 511 U.S. at 834. Marler asserts that Warden Derr, Dr. Pysh, Lazo, and Lopez should have been aware of the purported threat to his safety. ECF No. 1 at PageID ## 6–12. Marler does not say, however, who he complained to about his various housing assignments, when he did so, what he said in doing so, or what he was told in response. *Cf. Colon v. Los Angeles Cnty. Jail*, 2019 WL 404168, at *3 (C.D. Cal. Jan. 31, 2019) ("[T]here are inadequate allegations as to who allegedly acted with deliberate indifference, how that person learned of plaintiff's serious medical need, what the person specifically

15

did or did not do in response to that knowledge, and in what way those actions resulted in plaintiff's injury."). Thus, Marler has failed to state a plausible claim for relief based on his safety at FDC-Honolulu.

### F.  Injunctive Relief Under *Bivens*

In his request for relief, Marler asks for $300,000 and "an order from the court requiring [FDC-Honolulu] to properly protect vulnerable inmates by properly segregating security level inmates per Bureau of Prisons policy and applicable law."  ECF No. 1 at PageID #12.

"*Bivens* does not encompass injunctive and declaratory relief where . . . the equitable relief sought requires official government action."  *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.").  Thus, to the extent Marler asks the court to order FDC-Honolulu to segregate inmates in a certain way, that relief is not available under *Bivens*.[5]

---

[5] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020).  To bring such a claim, a prisoner must:  (1) invoke jurisdiction under 28 U.S.C. § 1331; (2) allege facts to state a colorable ongoing Eighth Amendment claim; (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief; and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation.  *Id.*; *see Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers,
(continued . . .)

## G. Request for an Injunctive Order or Emergency Hearing

Before the Court is also Marler's Request for an Injunctive Order or Emergency Hearing. ECF No. 6.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

For the reasons set forth above, Marler has not stated a cognizable claim. Marler's request for injunctive relief is therefore DENIED as premature. *See Hussain v. Ponce*, 2019 WL 1055235, at *2 (C.D. Cal. Jan. 8, 2019) (denying as premature motion for injunctive relief where the court had not issued summons and ordered service of the operative pleading, and the defendant had not been served or appeared in the action); *Keavney v. O'Brien*, 2020 WL 7318120, at *5 (S.D. Cal. Dec. 11, 2020) (denying motion for injunctive relief where complaint did not as not survive initial screening, service was not ordered, and defendants had no notice of complaint or motion).

---

and seek injunctive relief to remedy alleged constitutional violations."). Here, Marler does not invoke jurisdiction under 28 U.S.C. § 1331. Moreover, for the reasons set forth above, he fails to state a colorable Eighth Amendment claim.

## IV. **LEAVE TO AMEND**

The Complaint is DISMISSED with leave granted to amend. Marler may file an amended pleading on or before May 13, 2022. Marler may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Marler must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

## V. **28 U.S.C. § 1915(g)**

If Marler fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under

28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A qualifying dismissal counts as a strike whether the prisoner was litigating in forma pauperis or after paying a filing fee.  *See Belanus v. Clark*, 796 F.3d 1021, 1028 (9th Cir. 2015) ("[W]e conclude that the fact that a prisoner pays the docket fee is no barrier to a court, when dismissing the case as frivolous, directing that the dismissal count as a strike under 28 U.S.C. § 1915(g).").

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

(2) Marler may amend his pleading, however, by curing the deficiencies in his claims on or before May 13, 2022.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Marler may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Marler may voluntarily dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Marler a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

(6) The Request for an Injunctive Order or Emergency Hearing, ECF No. 6, is DENIED without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 14, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Marler v. Derr et al.,* Civ. No. 22-00088 JMS-WRP, Order (1) Dismissing Complaint, ECF No. 1, With Leave to Amend; and (2) Denying Without Prejudice Plaintiff's Request for an Injunctive Order or Emergency Hearing, ECF No. 6