ORIGINAL

1983 FORM Rev. 01/2008

Thomas Marler 05720-093
Name and Prisoner/Booking Number

FDC Honolulu
Place of Confinement

P.O. Box 30080
Mailing Address

Honolulu, Hawaii 96820
City, State, Zip Code

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 14 2022

at __1__ o'clock and _15_ min. _P_ M
CLERK, U.S. District Court ω

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

Thomas Marler
(Full Name of Plaintiff)

Case No. __CV22 00088 JMS WRP__
(To be supplied by the Clerk)

vs.

**PRISONER CIVIL RIGHTS COMPLAINT**

Estela Derr

Dr. Pysh

☐ Original Complaint
☐ First Amended Complaint
☒ Second Amended Complaint

(Full Names of Defendants; DO NOT USE *et al.*)

## A. JURISDICTION

1. Jurisdiction is invoked pursuant to:

    a. ☐ 28 U.S.C. § 1343(a)(3) ; 42 U.S.C. § 1983
    b. ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
    c. ☐ Other: (Please Specify) _____

2. Plaintiff: Thomas Marler

    Institution/city where violation occurred: FDC Honolulu

3. First Defendant *: Estela Derr

This defendant is a citizen of (state and county) Hawaii Oahu,
and is employed as:

Warden at FDC Honolulu
(Position and Title)        (Institution)

This defendant is sued in his/her _X_ individual ___ official capacity (check one or both). Explain how

1983 FORM Rev. 01/2008

this defendant was acting under color of law:

The Defendant had/has daily contact with inmate Monluk and is aware of the threat that he poses to other inmats and staff

4.  Second Defendant: ___Dr. Pysh___

This defendant is a citizen of (state and county) ___Hawaii___
___Oahu___, and is employed as:

___Head of Psychology___ at ___FDC Honolulu___
(Position and Title)                              (Institution)

This defendant is sued in his/her **X** individual ___ official capacity (check one or both).  Explain how this defendant was acting under color of law:

The Defendant interacted with the Plaintiff and inmate Monluk is in his care.

5.  Third Defendant: _____

This defendant is a citizen of (state and county) _____
_____, and is employed as:

_____ at _____
(Position and Title)                              (Institution)

This defendant is sued in his/her ___ individual ___ official capacity (check one or both).  Explain how this defendant was acting under color of law:

_____

(If you would like to name additional defendants, make a copy of this (blank) page and provide the necessary information.)

\*      A defendant may be named in an individual or official capacity, or both.  To sue a defendant in their **individual capacity**, you must be able to state facts showing that the defendant was <u>actually</u> involved in violating your rights.  A suit against a defendant in their **official capacity** is in reality a suit against the <u>office or position</u> the defendant holds.  Only injunctive relief is available in an official capacity suit against a state official.  This is because the **Eleventh Amendment** confers immunity upon the state or its officials against monetary damages resulting from federal court litigation.

"Color of law" refers to whether the person is a private party or an employee, official, or agent of a state, county, city, or the federal government.  There can be no civil rights action under § 1983 unless the defendant was "acting under color of law."  After the color of law requirement is met, then it must be determined in which capacity the defendant is being sued.

2

1983 FORM  Rev. 01/2008

## B. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits while a prisoner:    ☒ Yes    ☐ No

2. If your answer is yes, how many?: _____ 1 _____    Describe the lawsuit in the spaces below.

3. First previous lawsuit:

    a.  Plaintiff _____ Thomas Marker _____

        Defendants _____ Estella Derr , Et Al _____

    b.  Court and Case Number (if federal court, identify the district; if state court, identify the county): _____ U.S. District Court District of Hawaii No. CV22-00108-LEK KJM

    c.  Claims raised: _____ Medical care _____

    d.  Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____ Pending _____

    e.  Approximate date of filing lawsuit _____ March 2022 _____

    f.  Approximate date of disposition _____ Pending _____

4. Second previous lawsuit:

    a.  Plaintiff _____

        Defendants _____

    b.  Court and Case Number (if federal court, identify the district; if state court, identify the county):

        _____

    c.  Claims raised: _____

    d.  Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

        _____

    e.  Approximate date of filing lawsuit _____

    f.  Approximate date of disposition _____

3

1983 FORM  Rev. 01/2008

5.  Third previous lawsuit:

a.  Plaintiff _____

   Defendants _____

b.  Court and Case Number (if federal court, identify the district; if state sourt, identify the county):

   _____

c.  Claims raised: _____

d.  Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

   _____

e.  Approximate date of filing lawsuit _____

f.  Approximate date of disposition _____

(If you have filed more than three lawsuits, make a copy of this (blank) page and provide the necessary information.)

6.    Have you filed any actions in federal court that were dismissed because they were frivolous, malicious, or failed to state a claim upon which relief could be granted? ___Yes _X_No.

   **If you have had three or more previous federal actions dismissed for any of the reasons stated above, you may not bring another civil action in forma pauperis unless you are under imminent danger of serious physical injury.  See 28 U.S.C. § 1915(g).**

4

1983 FORM Rev. 01/2008

## C. CAUSE OF ACTION

### COUNT I

1.  The following constitutional or other federal civil right has been violated by the Defendant(s):
The Defendants as individuals and in their official capacity violated the

Plaintiff's 8th Amendment rights.

2.  Count I involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)    ☐Mail    ☐ Access to the court    ☐Medical care
☐ Disciplinary proceedings    ☐Property    ☐ Exercise of religion    ☐Retaliation
☐ Excessive force by an officer    ☒Threat to safety    ☐Other:_____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count I, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

The Plaintiff self-surrendered at FDC Honolulu on 1/18/2022 at the age of 62 with no BOP

orientation or understanding of the federal prison system. The Plaintiff was placed

in a quarantine unit (5B) in cell 5B-129. He remain there for 3 days by himself until

inmate Russell Monlux was placed in the 2 man locked down cell on 1/21/2022. The

Plaintiff remained in the locked down cell (23 1/2 hours per day at a minimum) until

2/14/2022. During the 24 days that the Plaintiff shared cell 5B-129 with Russell

Monlux, the Plaintiff was physically threatened on at least 3 occasions. Mr. Monlux

also threatened staff directly. Defendant Pysh interviewed the Plaintiff regarding

Mr. Monlux's homicidal tirades and threats to staff. In addition to being physically

threatened by Mr. Monlux, the Plaintiff was subject to Mr. Monlux's specific plans

***CONTINUED***

4.    Injury: (State how you have been injured by Defendant(s)' actions or inactions.
Severe psychiatric trauma, sleep deprivation, weight loss, lack of concentration

increased heart rate and other ill-effects to be determined by a physician.

5

regarding heinous things that he intended to do to BOP staff after his release in 2023. Some of these are described in more detail below.

The Plaintiff discussed the threat that he faced with CO Brunello when Mr. Monlux was issued an incident report by the CO the first week that Mr. Monlux was incarcerated. The Plaintiff was told by CO Brunello that the FDC Honolulu liked to place psychotic inmates exhibiting violent history with inmates that the institution believed might be a calming influence, or at least inmates that would not "punch the buttons" of the psychotic inmates. This was again communicated to the Plaintiff when he arrived at Unit 5A (after February 14, 2022) by CO Paalani in a conversation that was witnessed by other inmates at the table.

When CO Brunello and CO Paalani communicated this policy to the Plaintiff, the Plaintiff was not familiar with any aspect of the administrative remedy process. Neither CO Brunello, nor Defendant Pysh instructed the Plaintiff to register a complaint or submit an administrative remedy request during the interviews that occurred through the door of Unit 5B cell 129. The Plaintiff was merely placed in the cell with the violent Mr. Monlux to fend for himself then do his best to provide psychological counseling in a manner that did not lead to him being used as Monlux's punching bag. Plaintiff is a first time elderly offender and has no family relations that have had a history with BOP. As far as Plaintiff knew at that time, every cell in the Honolulu FDC included penitentiary-level violent offenders combined with minimal security offenders.

When the Plaintiff submitted his initial complaint, he failed to address issues that were required by the Court. The Honorable Court pointed out these deficiencies with its response and "Leave to Amend" has been offered. The Plaintiff did not specify US law and BOP policies in his initial complaint due to his understanding of filing requirements. However, in order to address these deficiencies, the Plaintiff draws the Court's attention to 18 U.S.C. 3142(i)(2) that states pretrial inmates are to be separated from persons awaiting or serving sentences to every practicable extent. BOP Program Statement 7331.04 states that what is rendered practicable is contingent upon the individual institution's design, structure, and operation. What is clear is the only condition in which a BOP institution can mix pretrial inmates from sentenced inmates is when the pretrial inmate does not present a risk to the institution's security or orderly running. While the Plaintiff recognizes that the Court cannot force the Defendants to follow BOP policies, 18 U.S.C. 3142 allows for the determination of "practicable" to be left to BOP officials, and then BOP 7331.04 defines "practicable". The Plaintiff alleges these actions constitute a clear violation of 18 U.S.C. 3142.

PAGE 5A

During Mr. Monlux's homicidal threatening tirades in cell 5B-129, the Plaintiff received detailed descriptions of Monlux's history of assaults on staff and inmates. At this time he did not know that this history was common knowledge among the Honolulu FDC staff. Since moving to Unit 5A, Plaintiff's knowledge of Mr. Monlux's violent history comes from the conversations that the Plaintiff had with COs Brunello, Paalani, and other staff members. Furthermore, Mr. Monlux writes delusional emails to Warden Derr on a daily basis, and these emails clearly indicate his alarming unstable mental state. The Plaintiff has submitted a subpoena for the communications between Defendant Derr and Mr. Monlux in order to present this material evidence to the Court. The Plaintiff alleges the Defendants are well-aware of Monlux's threat to the safety of his cellmate.

The full extent of the pending charges that Mr. Monlux faces are not known to the Plaintiff, but Plaintiff does know that Monlux has agreed to a 13- month sentence for his pending federal probation violations, and the hearings about his contestation of one charge are ongoing. The AUSA believes Monlux is a threat to society and as a result requested full psychological assessment, a motion that Monlux was contesting at the time Plaintiff was locked in the cell with Monlux. Moreover, Plaintiff also is aware that Mr. Monlux was charged with assault by the State of Hawaii (due to his actions perpetrated on January 20, 2022), and this case is in the pretrial stage. Therefore, Monlux is in the pre-sentence stage of the federal charges and pretrial stage of the State charges. These facts have not convinced the Defendants to obey federal law by placing Mr. Monlux where he belongs, in a pretrial housing unit where he cannot come into contact with sentenced inmates.

Placing Mr. Monlux with the Plaintiff represents deliberate indifference by all named Defendants. Defendant Derr has first hand knowledge of Mr. Monlux's mental state with the emails that she receives. The Plaintiff has read several of these emails to know that the delusional and violent component of Mr. Monlux's personality are known by Defendant Derr. The BOP is clear about harassment of BOP staff. These emails undoubtedly constitute harassment, yet Defendant Derr has looked the other way to ensure the manner in which the Honolulu FDC has mixed violent pretrial inmates with non-violent post-sentence inmates does not become public knowledge.

Dr. Pysh has full knowledge of Mr. Monlux's history through interactions with him in the presence of the Plaintiff between January 21, 2022 through February 14, 2022 (when Mr. Monlux and the Plaintiff were transferred to Unit 5A general population). The Plaintiff was subjected to the hostility of many of these interactions because they occurred through the locked door of cell 129 and Plaintiff was locked inside.

The Honorable Court referenced prison officials have a duty to "take reasonable measures to guarantee safety of the inmates" in the Court's "Leave to Amend". Not only does the Monlux situation indicate a failure on the part of the Defendant Derr to guarantee safety, but the gang riot on July 12, 2021 does as well. The riot involved more than 30 inmates from a variety of gangs (La Familia, Murder Inc., MS-13, Uso,

PAGE 5B

Paisa, Tango, and Northeno) and was the result of gambling debts. When the Plaintiff finally received the BOP required orientation in late February in unit 5A, the attendees were told by CO Bautista that "we know that gambling is going on in the unit and we expect you to pay your gambling debts and do not come to us for protection." The gambling which continues to date occurs under six CCTV cameras and is frequently watched by unit staff. Each hand of poker is in excess of $200 with hourly gambling of more than $5,000, per the inmates who participate. It would be difficult for the Plaintiff to come up with a better example of the irresponsible deliberate indifference than the sanctioned illegal gambling by Warden Derr. Further evidence of this fact is that multiple inmates have filed more than 65 civil actions against Defendant Derr since March 2022, and many of these actions confirm that the gambling was the cause of the gang riots in the past year. Yet nothing has been done to halt the illegal activity or the threats to the non-participating inmates caused by the hostility that erupts during the gambling events.

Mr. Monlux did in fact threaten the Plaintiff with violence on many occasions, all of which were initiated by BOP staff doing something that caused Monlux to become infuriated. The Plaintiff was terrorized by Monlux on each of these occassions because Monlux was unable to direct that rage to the BOP staff after they walked away from the door but was readily able to direct the rage to his cellmate. Individuals that perpetrated similar behavior outside the Honolulu FDC would be charged with a variety of federal crimes. The Plaintiff acknowledges that the BOP must house violent offenders and is in a difficult situation in that regard. But Mr. Monlux's situation is vastly different. Mr. Monlux has a history of assaulting his roommates when they are confined for long periods of time, precisely like the January 21 through February 14 situation with the Plaintiff. This was the reason that Monlux was moved to seven different BOP facilities including penitentiaries during the five year sentence he completed on January 3, 2022.

The claims stated against Defendants Derr and Pysh are done so in their individual capacity. Defendant Derr continued to receive daily emails from inmate Monlux until he was finally placed in the Special Housing Unit the first week of May. Both Defendants have been served with the original filing of two civil actions that are pending. Yet Mr. Monlux stayed in the general population of Unit 5A from February 14, 2022 until the first week of May 2022, indicating the Defendants were indifferent to the threat to safety that the Plaintiff experienced every day. The Plaintiff further alleges that Mr. Monlux was placed in the cell with him by Defendant Derr in an action taken by her with her full knowledge. Monlux was housed at the Honolulu FDC in 2017 and was a disciplinary problem at that time as well. The Plaintiff further alleges that Defendant Derr has intimate knowledge of Mr. Monlux's violent history and the ongoing threat to other inmates and staff. The Plaintiff specifically alleges that both Defendants Derr and Pysh made the conscious decision to place Monlux with the Plaintiff because he was a 62-year-old university professor with a successful academic career and the fatherly figure would provide a calming influence on inmate Monlux. The Plaintiff specifically alleges that the actions taken by Defendants Derr and Pysh were done so without regard to the Plaintiff's emotional and physical safety.

PAGE  5C

The Plaintiff specifically alleges that Defendants Derr and Pysh are aware of the law and the BOP policy that disallow mixing pretrial with sentenced inmates, but chose to ignore both.

Once Mr. Monlux was placed in cell 129 with the Plaintiff, the Plaintiff had no opportunity to rectify the situation other than to talk to Defendant Pysh and CO Brunello whenever they showed up at the door of the cell during the first few days. The Plaintiff very rapidly came to the realization that the Honolulu FDC had no intention of responding to his direct complaints. The Plaintiff was locked down for all but 45 minutes per week, and had no access to the law library to research mitigation options, no access to the administrative remedies because nobody provided the orientation he was entitled to, and no knowledge of BOP procedures. Not known to the Plaintiff at the time, but now known, is the fact that both Defendants Derr and Pysh had the ability and responsibility to move him to a cell that did not contain a violent inmate, but failed to do so.

Threat to safety first event. The first time Mr. Monlux intended to inflict physical harm to Plaintiff occurred because of the actions of Case Manager Ms. Lazo the last week of January 2022. While she was doing rounds in unit 5B, Mr. Monlux called her to the door of cell 219 and began to describe inconsistencies in the police report he was reviewing in preparation for his impending hearing. Ms. Lazo abruptly walked away from the door without saying a word when she realized that he was asking for advice on a hearing. Mr. Monlux began shouting threats to Ms. Lazo as she walked away, but she never responded and left the Plaintiff in the cell with Monlux despite the violent nature of his threats. After his tirade began talking about how he would douse Ms. Lazo with gasoline and light her up with a welding torch after he is released in 2023, Plaintiff passively asked Monlux to stop the violent rhetoric. This enraged Mr. Monlux and his anger and threat of physical assault turned to the Plaintiff.

Threat to safety second event. The second time Mr. Monlux intended to inflict physical harm to Plaintiff was also the last week of January when Dr. Pysh purposefully enraged Mr. Monlux by taunting him through the door. Mr. Monlux had previously demanded that all FDC psychology staff members have no interaction with him. This request was given to Warden Derr and Dr. Pysh was in possession of this request when Dr. Pysh began to taunt Mr. Monlux just to punch his buttons. It was on these occasions that Plaintiff began to realize that nobody at the Honolulu FDC would come to his rescue if the head of the psychology department would willfully do something this unprofessional and unethical, then fail to consider the ramifications to the psychotic inmate's cell mate. After one of these taunting events, Mr. Monlux began to describe how he planned to tie Dr. Pysh to a chair after his 2023 release and do a kidney stab with a shiv then sit vaping while he watched Dr. Pysh bleed out. Again, when Plaintiff could no longer tolerate the violent rhetoric, he asked Mr. Monlux to tone it down. Mr. Monlux became enraged with the Plaintiff and the threat of physical assault turned to the Plaintiff by holding a razor weapon to Plaintiff's throat until receiving an apology.

PAGE SD

Threat to safety third event. The third time that the Plaintiff's safety was threatened was when CO Brunello purposefully enraged Mr. Monlux. This was the first week of February 2022 after Mr. Monlux had asked CO Brunello to bring the newspaper to his cell numerous times throughout the day. After watching Brunello slide the newspaper under the door of many other cells, his aggression increased when he continued to ask for his turn with the newspaper. Just prior to the end of Brunello's work shift she walked in front of cell 129 and told Monlux that she did not know where the newspaper was. After agitating him until he started verbally threatening her, she pulled the newspaper out from the back of her jacket and set it on the table that was directly in front of the window of the cell 129 door then walked away. This enraged Mr. Monlux because the newspaper he had asked for repeatedly was in view only 3 yards in front of the window of his cell door. He shouted threats to CO Brunello as she walked away and she returned verbal threats to send him "up to the SHU" if he did not shut up. The resulting verbal tirade from Mr. Monlux described how he would kidnap CO Brunello after his 2023 release and pound her face until she fell asleep while he was raping her. Mr. Monlux transferred his rage to the Plaintiff and threatened physical assault because the Plaintiff did not help him get the newspaper that he deserved.

Plaintiff educated himself before self-surrenduring to the Honolulu FDC on January 18, 2022 and was aware that the most effective way to invite physical beatings or murder is to snitch on other inmates. At the FDC, the Plaintiff learned that the COs also hate snitches and look the other way if an inmate endures physical assault due to snitching. For these reasons, BOP officials are aware that no inmate will divulge information in an interview unless no other unit inmate is aware of the interview. At no time was Plaintiff given an opportunity to communicate the ongoing threats to his safety in a manner that other Unit 5B inmates were unaware. Therefore, the Plaintiff was unable to communicate the events directly to Defendant Derr. The Plaintiff was in a locked down unit within a locked cell during this time. The Plaintiff intends to not only subpoena Mr. Monlux's criminal record to confirm attacks on inmates and staff, but also the notes and disciplinary record of Mr. Monlux while they shared a cell in January and February. These records will confirm that the Plaintiff complained to staff, that disciplinary action was taken against Mr. Monlux, yet he was not placed in segregation as required by law. The Court will be able to review all of the facts that support Plaintiff's allegations if Plaintiff is able to pursue discovery.

PAGE 5 E

1983 FORM  Rev. 01/2008

## COUNT II

1.    The following constitutional or other federal civil right has been violated by the Defendant(s):

_____

_____

2.   Count II involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)    ☐Mail    ☐ Access to the court    ☐Medical care

☐ Disciplinary proceedings    ☐Property    ☐ Exercise of religion    ☐Retaliation

☐ Excessive force by an officer    ☐Threat to safety    ☐Other:_____

3. **Supporting Facts:**(State as briefly as possible the FACTS supporting Count II, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4.    Injury: (State how you have been injured by Defendant(s)' actions or inactions.

_____

_____

_____

6

1983 FORM  Rev. 01/2008

## COUNT III

1.    The following constitutional or other federal civil right has been violated by the Defendant(s):

_____

_____

2.   Count III involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)   ☐ Mail      ☐ Access to the court    ☐ Medical care

☐ Disciplinary proceedings       ☐ Property    ☐ Exercise of religion    ☐ Retaliation

☐ Excessive force by an officer     ☐ Threat to safety    ☐ Other:_____

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count III, without citing legal authority or arguments. Describe exactly what each Defendant did or did not do to violate your rights.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4.    Injury: (State how you have been injured by Defendant(s)' actions or inactions.

_____

_____

(If you assert more than three Counts, make a copy of this (blank) page and provide the necessary information.)

7

1983 FORM  Rev. 01/2008

## D.  REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you.  Make no legal arguments.  Cite no cases or statutes.

$ 300,000 .00

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.  See 28 U.S.C. § 1746 and 18 U.S.C. §1621.

Signed this __9th__ day of _____June_____ , _2022_.
  (month)          (year)

_____
(Signature of Plaintiff)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If needed, you may attach no more than **fifteen (15) additional pages**.  Number these pages in relation to the final page number of the section that is being extended (i.e. additional defendants' pages should be numbered "2A, 2B, etc.," additional previous lawsuits' pages "4A, 4B, etc.," additional claims should be numbered "7A, 7B, etc." This form, however, must be completely filled in to the extent applicable.

8