IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS MARLER, | CIV. NO. 22-00088 JMS-WRP |
| Plaintiff, | |
| vs. | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 31 |
| ESTELA DERR, *et al.*, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 31

## I. INTRODUCTION

Pro se Plaintiff Thomas Marler ("Marler") brought this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that two prison officials at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu") violated the Eighth Amendment's prohibition

against cruel and unusual punishment by housing Marler with a "violent" inmate.[1]

ECF No. 13 at PageID.90–PageID.95.  Defendants filed a Motion to Dismiss Second

Amended Complaint ("Motion") arguing, among other things, that Marler's claims

are not cognizable under *Bivens*.[2]  *See* ECF No. 31; *see also* ECF No. 31-1 at

PageID.153–PageID.165.  The court agrees that Marler cannot pursue his claims

against Defendants under *Bivens* and, for the following reasons, GRANTS

Defendants' Motion, ECF No. 31.[3]

## II.  BACKGROUND

Marler self-surrendered at FDC Honolulu on January 18, 2022.  ECF

No. 13 at PageID.90.  Marler lived alone in a two-person cell until January 21, 2022,

when a prisoner named Russell Monlux moved in with him.  *Id.*  The two men shared

---

[1] Marler names as Defendants Warden Estela Derr and Dr. Pysh (collectively "Defendants").  ECF No. 13 at PageID.86–PageID.87.  According to the Federal Bureau of Prisons' online inmate locator, Marler was released on November 9, 2022.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "05720-093"; and select "Search") (last visited Mar. 23, 2023).

[2] Even assuming that Marler's claims are cognizable, Defendants argue that qualified immunity shields them from personal liability.  *See* ECF No. 31-1 at PageID.165–PageID.168.  Because no *Bivens* remedy is available to Marler, the court need not reach Defendants' qualified immunity argument.  *See Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) ("Because [plaintiff] has no cause of action under *Bivens*, we need not consider whether [defendant] would be entitled to qualified immunity.").

[3] In earlier pleadings, Marler also named as defendants a case manager and a case management coordinator at FDC Honolulu.  *See* ECF No. 1 at PageID.2–PageID.3; ECF No. 10 at PageID.54.  The court previously dismissed any claims against these individuals.  *See* ECF No. 9 at PageID.42–PageID.48; ECF No. 11 at PageID.74–PageID.81.

a cell for 24 days. *Id.* During this time, Monlux "physically threatened" Marler three times. *Id.*

During the first incident, Monlux became upset after a case manager ignored his request to discuss "inconsistencies" in a police report. *Id.* at PageID.94. When Marler asked Monlux to stop threatening the case manager, Monlux became "engraged," turned on Marler, and threatened to assault him. *Id.*

During the second incident, Dr. Pysh allegedly "taunt[ed]" Monlux through his cell door. *Id.* Monlux became angry and threatened to harm Dr. Pysh. *Id.* When Marler asked Monlux to "tone it down," Monlux grew "enraged" and held a razor to Marler's neck until he apologized. *Id.*

During the third incident, a correctional officer allegedly left a newspaper directly in front of Monlux's cell-door window, after Monlux had asked all day to see a newspaper. *Id.* at PageID.95. Monlux verbally threatened the correctional officer. *Id.* Citing a lack of effort to help him secure a newspaper, Monlux also threatened to assault Marler. *Id.*

Marler asserts that Defendants were aware that Monlux posed a threat to his safety. *Id.* at PageID.92. According to Marler, Monlux had "a history of assaulting his roommates when they [were] confined for long periods of time." *Id.* at PageID.93. Marler asserts that Dr. Pysh interviewed Monlux about his "homicidal

tirades and threats to staff," *id.* at PageID.90, and Warden Derr received "delusional emails" from Monlux on a "daily basis," *id.* at PageID.92.[4]

On June 14, 2022, the court received the operative pleading in this suit— that is, the Second Amended Complaint ("SAC"). *Id.* In the SAC, Marler alleges that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by threatening his safety. *See id.* at PageID.90–PageID.95. According to Marler, he experienced "[s]evere psychiatric trauma, sleep deprivation, weight loss, lack of concentration, increased heart rate, and other ill-effects" because of the three incidents involving Monlux. *Id.* at PageID.90. Marler seeks $300,000 in damages. *Id.* at PageID.98.

Defendants filed the Motion on February 1, 2023, arguing that the SAC should be dismissed because Marler's constitutional tort claims present a new context that is not cognizable under the Supreme Court's current *Bivens* framework. *See* ECF No. 31; *see also* ECF No. 31-1 at PageID.153–PageID.165.

The court received Marler's Response on March 6, 2023. ECF No. 33. In the Response, Marler describes Defendants' *Bivens* argument as a "red herring." According to Marler, "[t]he only recourse offered within the law is monetary

---

[4] As further evidence that Warden Derr was indifferent to inmate safety, Marler alleges that she failed to stop gambling by prisoners that resulted in a "gang riot" on July 12, 2021. ECF No.13 at PageID.92–PageID.93. This incident, however, occurred months before Marler arrived at FDC Honolulu. It does not appear that the circumstances that resulted in the riot or the prisoners involved in that incident have any connection to Marler's claims in this action.

damages sought in a Bivens action."  ECF No. 33 at PageID.170 –PageID.171.  The court received Defendants' Reply on March 17, 2023.  ECF No. 34.  The court decides this matter without a hearing pursuant to Local Rule 7.1(d).

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Marler is appearing pro se; thus, the court liberally construes his pleadings.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Rowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

## IV.  <u>ANALYSIS</u>

Marler brought this suit pursuant to *Bivens* alleging that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment

by threatening his safety.  *See* ECF No. 13 at PageID.90–PageID.95.  Before the

merits of Marler's claims can be reached, the court must first decide whether a *Bivens*

remedy is available to Marler.  *See, e.g.*, *Manansingh v. United States*, 2021 WL

2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal

officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the

first place.").  Because no such remedy exists, the SAC and this action must be

dismissed.

**A.     Legal Framework for Determining Whether a *Bivens* Remedy Exists**

While "Congress has made a cause of action available to any person who

has suffered 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' at the hands of someone acting under color of state law," it

"has not created a general cause of action to redress violations of the Constitution by

*federal* officers."  *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023) (quoting

42 U.S.C. § 1983) (alteration in original).

In three cases decided between 1971 and 1980, however, "the Supreme

Court held that the Constitution contains an implied cause of action through which

plaintiffs can seek damages from federal officers who violate their constitutional

rights."  *Id.*  In *Bivens*, the Court held that a plaintiff could seek damages from

Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment

right to be free from unreasonable searches and seizures.  403 U.S. at 397.  The Court

extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment.  442 U.S. 228, 230–31 (1979).  Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment by failing to treat severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14, 16–18 (1980).  "These three cases—*Bivens*, *Davis*, and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor.").  Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution."  *Egbert*, 142 S. Ct. at 1809.  Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[5]  *Abbasi*, 582 U.S. at 135 (citation omitted).

---

[5] The Supreme Court has declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race

(continued . . . )

Now, when asked to imply a *Bivens* remedy, courts must use "caution."
*Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that
Congress might doubt the efficacy or necessity of a damages remedy, courts must
refrain from creating it. *Id.* Thus, "'the most important question is who should
decide whether to provide for a damages remedy, Congress or the courts?'" *Id.*
(citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case,
courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts
"ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803.
At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating
that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs

_____

discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a
substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669
(1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*,
487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful
termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private
halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S.
61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his
exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit
under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service
personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison
guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit
against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment
suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a
First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S.
Ct. at 1793.

and benefits of allowing a damages action to proceed.'"[6]  *Pettibone*, 59 F.4th at 454

(citation omitted).

**B.      Marler's Claims Present a New Context**

The Supreme Court's "understanding of a 'new context' is broad."

*Hernandez*, 140 S. Ct. at 743.  A case presents a new context if it is "different in a

meaningful way from previous *Bivens* cases decided by [the Supreme Court]."

*Abbasi*, 582 U.S. at 139.  The Supreme Court has provided a non-exhaustive list of

differences that may be "meaningful" including the rank of the officers involved, the

constitutional right at issue, the generality or specificity of the official action, the

extent of judicial guidance as to how an officer should respond to the problem or

emergency to be confronted, the statutory or other legal mandate under which the

officer was operating, the risk of disruptive intrusion by the Judiciary into the

functioning of other branches of government, and the presence of potential special

factors that previous *Bivens* cases did not consider.  *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context

even if it is based on the same constitutional provision as a claim in a case in which a

---

[6] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  142 S. Ct. at 1803.  At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework."  *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022).  The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step.  *Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023).  The court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Marler's claims.

damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.  Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context." *Abbasi*, 582 U.S. at 147.  In other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 61 F.4th at 669 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles.  In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property.  142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, Marler's Eighth Amendment claims differ meaningfully from both the Fourth Amendment claims in *Bivens* and the Fifth Amendment claim in *Davis* because Marler's claims are based on entirely different constitutional rights.  *See Abbasi*, 582 U.S. at 148 (concluding that claims arose in new context because "[t]he constitutional right [was] different").  Marler's claims also differ meaningfully from the claims in *Carlson*.  Although Marler's claims, like the claims in *Carlson*, are based on the Eighth Amendment's prohibition against cruel and unusual punishment,

11

the mechanism of injury in this case is different than in *Carlson*—that is, a threat to

Marler's safety as opposed to a denial of adequate medical care.  *See Cohen v. United

States*, --- F. Supp. 3d ---, 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022)

(concluding that Eighth Amendment conditions of confinement claim presented new

context).  Thus, Marler's Eighth Amendment threat to safety claims arise in a new

context.  *See Zaragosa-Solis v. Gutierrez*, 2023 WL 2444998, at *4 (D. Ariz. Feb. 21,

2023) ("Plaintiff's Eighth Amendment threat-to-safety claim arises in a new context

because it is substantially and meaningfully different from the three types of cases in

which the Supreme Court has recognized a *Bivens* remedy."); *Carey v. Von

Blanckensee*, 515 F. Supp. 3d 1051, 1057 (D. Ariz. 2021) ("Plaintiff's Eighth

Amendment [threat to safety] claim arises in a new context because it is substantially

and meaningfully different from the three types of cases in which the Supreme Court

has recognized a *Bivens* remedy."), *appeal dismissed*, 2021 WL 2026260 (9th Cir.

Mar. 11, 2021);  *Hoffman v. Preston*, 2019 WL 5188927, at *5 (E.D. Cal. Oct. 15,

2019) ("Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth

Amendment claim in *Carlson* because Plaintiff's claim arises out of allegations that a

correctional officer offered to pay inmates to harm Plaintiff and labeled Plaintiff a

snitch in front of other inmates, not failure to provide medical care."), *report and

recommendation adopted*, 2020 WL 58039 (E.D. Cal. Jan. 6, 2020), *rev'd and

remanded*, 26 F.4th 1059 (9th Cir. 2022), *superseded*, 2022 WL 6685254 (9th Cir.

12

Oct. 11, 2022), *and opinion withdrawn*, 50 F.4th 927 (9th Cir. 2022), *and aff'd*, 2022 WL 6685254 (9th Cir. Oct. 11, 2022).

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is relevant to deciding whether a case presents a new context.  *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. at 1803 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.") (citation omitted).  As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for Marler's claims, including the existence of the Federal Bureau of Prisons' administrative remedy program.  Because this factor was not considered by the Supreme Court in *Carlson*, this is another reason that Marler's claims arise in a new context.  *See Hoffman v. Preston*, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original); *Hurst v. Dayton*, 2023 WL 2526460, at *5 (D. Haw. Mar. 15, 2023) (dismissing claim against prison official in part because the BOP's administrative remedy program provides an alternative remedy); *Kaneakua v. Derr*, 2023 WL 2539952, at *6 (D. Haw. Mar. 16, 2023) (same).

For all these reasons, Marler's claims are meaningfully different from the claims in *Bivens*, *Davis*, and *Carlson*, and the court must proceed to step two.

## C.     Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1798 (citation omitted). Thus, at step two, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1803 (citation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted). In conducting this analysis, courts must ask "'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* at 1805 (citation omitted). If there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted). This will be the outcome in "most every case." *Id.* at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804. It does not matter whether a *Bivens*

remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed.  *Id.*  Likewise, "it does not matter that 'existing remedies do not provide complete relief.'"  *Id.* (citation omitted).  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."  *Id.* at 1807.

Here, the court cannot recognize a *Bivens* remedy because Marler had or has alternative remedies available to him.  While Marler was incarcerated at FDC Honolulu, he had available to him the Federal Bureau of Prisons' alternative remedial program.  *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Hoffman*, 2022 WL 6685254, at *1 ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

Marler alleges that he did not know about the BOP's administrative remedy program.  ECF No. 13 at PageID.94.  Even assuming this is true and Marler's awareness of the BOP's alternative remedy program is relevant, another special factor counsels against recognizing a *Bivens* remedy in this new context because Congress provided an alternative remedy through the Federal Tort Claims Act ("FTCA").  *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott v. United States*, 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023) ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson v. Garland*, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022) ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action."); *MT v. United States*, 2023 WL 2468948, at *13 (S.D. Cal. Mar. 10, 2023) ("[T]he alternative remedy available through the FTCA constitutes a special factor that forecloses Plaintiffs' *Bivens* claim.").

Thus, the Court cannot "second-guess" the judgments made by Congress and the Executive "by superimposing a *Bivens* remedy."  *Egbert*, 142 S. Ct. at 1807; *see also MT*, 2023 WL 2468948, at *13; *Van Gessel v. Moore*, 2020 WL 905216,

at*11 (E.D. Cal. Feb. 25, 2020) ("Since Plaintiff has or had alternative remedies available to him, this special factor counsels against extending a *Bivens* damages remedy to Plaintiff's Eighth Amendment failure to protect claim."), *report and recommendation adopted*, 2020 WL 1812150 (E.D. Cal. Apr. 9, 2020).

As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case does not present the unusual circumstances required to recognize a *Bivens* remedy.

## V. <u>CONCLUSION</u>

Because Marler's claims arise in a new context and special factors weigh against recognizing a new *Bivens* remedy, Defendants' Motion, ECF No. 31, is GRANTED for failure to state a claim upon which relief can be granted. Because amendment would be futile, the SAC is DISMISSED without leave to amend. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile). The Clerk of Court is DIRECTED to close the case and enter judgment in favor of Defendants.

\\\

\\\

\\\

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2023.



   /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Marler v. Derr*, Civ. No. 22-00088 JMS-WRP, Order Granting Motion to Dismiss Second Amended Complaint, ECF No. 31

18